| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF ST. LOUIS | SIXTH JUDICIAL DISTRICT |
| | Case Type: Other Civil |

| | |
|---|---|
| Matthew Starc,<br><br>                Plaintiff,<br>vs.<br><br>Experian Information Solutions, Inc., and American Bank of the North,<br><br>                Defendants. | Court File No.:<br>Judge:<br><br><br>**<u>Summons</u>** |

THIS SUMMONS IS DIRECTED TO THE ABOVE-NAMED DEFENDANT(S):

    1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

Kazerouni Law Group<br>
120 S. 6th St., Suite 2050<br>
Minneapolis, MN 55402

    3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case**.

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

**KAZEROUNI LAW GROUP, APC**

Date: December 28, 2020

By:/s/ Anthony Chester
Anthony P. Chester (Bar No. 0396929)
**KAZEROUNI LAW GROUP, APC**
120 South 6th Street, Suite 2050
Minneapolis, MN 55402
Telephone: (952) 225-5333
Facsimile: (800) 635-6425
Email: tony@kazlg.com

*Attorneys for Matthew Starc*

| | |
|---|---|
| **STATE OF MINNESOTA** <br> **COUNTY OF ST. LOUIS** | **DISTRICT COURT** <br> **SIXTH JUDICIAL DISTRICT** <br> Case Type: Other Civil |

| | |
|---|---|
| Matthew Starc, <br><br>        Plaintiff, <br> vs. <br><br> Experian Information Solutions, Inc., and American Bank of the North, <br><br>        Defendants. | Court File No.: <br> Judge: <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information

on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. Matthew Starc ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Experian Information Solutions, Inc. ("Experian") and American Bank of the North ("American Bank") (jointly as "Defendants"), with regard to erroneous reports of derogatory credit information and Defendants' failure to properly investigate Plaintiff's disputes.

4. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendants took place in Minnesota.

7. Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heir, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant named.

9. Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

### PARTIES, JURISDICTION, AND VENUE

10. Jurisdiction of this Court arises pursuant to general state jurisdiction.

11. Plaintiff is an individual residing in the County of St. Louis, State of Minnesota.

12. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

13. Defendant Experian is a business entity doing business in the County of St. Louis, State of Minnesota.

14. Defendant Experian's registered agent address is: CT Corporation Systems Inc., 1010 Dale St. N., St. Paul, Minnesota 55117.

15. Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

16. Defendant American Bank is an entity doing business in the County of St. Louis, State of Minnesota.

17. Defendant American Bank is located at 117 Central Ave, Nashwauk, MN 55769.

18. The creditor named herein, American Bank, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

19. Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

20. Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein Defendants were the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Defendants are liable to Plaintiff or the relief prayed for herein.

21. Venue lies with this Court pursuant to Minn. Stat. § 542.01 because that is where the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

22. On or about June 2012, Plaintiff incurred a debt with American Bank, with an account number beginning in ▇▇▇, related to financial obligations on a credit card account (the "Account").

23. The Account represented an unsecured debt.

24. On or about April 4, 2014, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Minnesota pursuant to 11 U.S.C. § 1301 *et seq*. Plaintiff's case was assigned Case Number 14-50248 (the "Bankruptcy").

25. Plaintiff received a discharge on January 24, 2019.

26. Accordingly, any debt that was not reaffirmed (if a debt existed at all) to American Bank was discharged through the Bankruptcy on January 24, 2019.

27. It is illegal and inaccurate for Defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

28. However, Defendants either reported or caused to be reported inaccurate and/or materially misleading information after the Bankruptcy as discussed herein.

## *Metro 2 Reporting Standards*

29. Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

30. The Consumer Data Industry Association ("CDIA") publishes Metro 2 to assist furnishers with their compliance requirements under the FCRA.

31. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation 'Discharged in bankruptcy' and with a zero balance due").

32. On information and belief, Defendants adopted and at all times relevant implemented Metro 2.

33. On information and belief, Defendants adopted Metro 2 and at all times relevant implemented Metro 2 as an integral aspect of their duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

34. Despite Metro 2's instructions, Defendants failed to conform to Metro 2 when reporting on Plaintiff's account after Plaintiff filed Bankruptcy as further set forth below.

35. To this end, the adverse reporting on Plaintiff's reports departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

### *The Impact of Inaccurate or Misleading Information on Consumer Reports*

36. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    i. credit or insurance to be used primarily for personal, family, or household purposes;

    ii. employment purposes; or

    iii. any other purpose authorized under section 1681b.

37. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

38. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

39. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

### *Credit Scoring*

40. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

41. Defendant's departures from the credit industry's own reporting standards and reporting inaccurate and derogatory information has caused Plaintiff to suffer from reduced FICO credit scores.

42. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

43. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

44. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO

score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

45. Payment history is typically weighted as the most important aspect of a consumer's overall credit score because it shows how the consumer has managed their finances, including: any late payments, how long the consumer has been managing their accounts, when their last payments were made, and any recent charges. *See, e.g.,* https://www.transunion.com/credit-score.

46. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

47. Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

48. Here, incorrectly reporting the Account as charged off with a balance of $5,015 as of June 2019—when the Account was in fact discharged in

bankruptcy with no amount owing as of June 2019—adversely affects Plaintiff's FICO score.

49. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; i.e., a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

50. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### *Experian and American Bank's Inaccurate Reporting of the Account on the Experian Credit Report*

51. In Plaintiff's credit report from Experian dated sometime before May 2019 (the "Experian Credit Report"), Experian and American Bank failed to report accurate information on the Account.

52. Due to Plaintiff's bankruptcy filing on April 4, 2014, and discharge on January 24, 2019, Experian and American Bank were required to report the Account as closed with a $0 account balance.

53. Defendants did not report that the Account was included in bankruptcy.

***Plaintiff's Dispute***

54. On or after May 21, 2019, Plaintiff disputed Experian's reporting regarding the Account pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and inaccurate credit information.

55. Specifically, Plaintiff sent a letter to Experian requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected as to the Account.

56. Experian was required to conduct an investigation into the Account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

57. Experian was required to send notice of Plaintiff's dispute to American Bank, pursuant to 15 U.S.C. § 1681i(a)(2).

58. Upon information and belief, Experian notified American Bank of Plaintiff's dispute.

59. Upon information and belief, American Bank received notice of Plaintiff's dispute as to the reporting of the Account on the Experian Credit Report.

60. A reasonable investigation by Experian would have indicated that it was reporting the Account inaccurately.

61. A reasonable investigation by American Bank would have indicated that it was reporting the Account inaccurately on Plaintiff's Experian Credit Report.

62. American Bank failed to conduct a reasonable investigation despite receiving notice of Plaintiff's bankruptcy discharge from the Bankruptcy Court and

receiving notice of the inaccurate information on Plaintiff's Experian Credit Report from Plaintiff's dispute letter to Experian.

63. Instead, American Bank re-reported the Account inaccurately to Experian.

64. Experian re-reported the Account inaccurately as well.

### *The Continued Inaccurate Reporting of the Account by Experian and American Bank*

65. On Experian dispute results dated June 20, 2019 ("Experian Dispute Results"), Experian and American Bank failed to accurately report the Account as discharged through Bankruptcy.

66. Instead, on the Experian Dispute Results, Experian and American Bank inaccurately reported that the Account was "charged off", "$5,016 written off", and "$5,015 past due as of June 2019."

67. Experian and American Bank further inaccurately reported in the Payment History that the Account was "charged off" from September 2015 through February 2019 and June 2019.

68. Experian and American Bank's reporting was inaccurate because the Account was discharged through Bankruptcy and closed.

69. American Bank's failures were egregious in that American Bank received notice of Plaintiff's Bankruptcy discharge and notice of the inaccurate reporting on the Experian Credit Report, yet American Bank affirmed the

inaccurate reporting of the Account to Experian and caused the Account to continue to report inaccurately.

70. Experian's failures were particularly noteworthy in that Experian received notice of the inaccurate reporting on the Experian Credit Report and had access to Plaintiff's publicly accessible Bankruptcy documents, yet Experian continued to report the Account inaccurately.

### *Defendants' Failures and Plaintiff's Damages*

71. It is inaccurate to report an account as charged off with a balance when the account was instead discharged in bankruptcy and closed.

72. Reporting that an account was charged off instead of reporting that the account was included in bankruptcy is detrimental to a consumer's credit reputation.

73. It is inaccurate to report a charge off amount is past due when no amount is due or owing.

74. As evidenced by Experian's failure to correct the reporting of the Account despite receiving knowledge of the bankruptcy and discharge, and having access to search Plaintiff's publicly available bankruptcy information, Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

75. As evidenced by the inaccurate re-reporting, Defendants, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

76. Defendants failed to review all relevant information provided by Plaintiff in the dispute to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

77. Due to Defendants' failure to reasonably investigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

78. Defendants' continued inaccurate and negative reporting of the Account in light of their knowledge of the errors was willful. Plaintiff is, accordingly, eligible for statutory damages.

79. Also as a result of Defendants' continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including, without limitation, fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, and emotional distress.

80. Creating the false impression of the Account as owing creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's Experian credit reports engaged in judgment-based lending.

81. By inaccurately reporting account information after notice and confirmation of its errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

### First Cause Of Action
### The Fair Credit Reporting Act
### 15 U.S.C. §1681 *ET SEQ.* (FCRA)

82. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

83. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

84. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. §1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

85. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable

attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3) from each Defendant.

## REQUEST FOR JURY TRIAL

86. Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

1. A declaratory judgment that Defendant's actions as discussed herein are unlawful;

2. Plaintiff's actual damages;

3. Statutory damages of not less than $100 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), against Defendant;

4. Punitive damages against Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5. An award of costs of litigation and reasonable attorney's fees against Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and

6. Any other relief the Court may deem just and proper.

|  |  |
|---|---|
|  | **KAZEROUNI LAW GROUP** |
| Date: December 28, 2020 | By:/s/ Anthony Chester |
|  | Anthony P. Chester (Bar No. 0396929) |
|  | **KAZEROUNI LAW GROUP** |
|  | 120 South 6th Street, Suite 2050 |
|  | Minneapolis, MN 55402 |
|  | Telephone: (952) 225-5333 |
|  | Facsimile: (800) 635-6425 |
|  | Email: tony@kazlg.com |
|  | *Attorneys for Matthew Starc* |

## ACKNOWLEDGEMENT

The undersigned acknowledges that sanctions may be imposed pursuant to Minn. Stat. § 549.211.

|  |  |
|---|---|
|  | **KAZEROUNI LAW GROUP** |
| Date: December 28, 2020 | By: /s/ Anthony Chester<br>Anthony P. Chester (Bar No. 0396929)<br>**KAZEROUNI LAW GROUP**<br>120 South 6th Street, Suite 2050<br>Minneapolis, MN 55402<br>Telephone:  (952) 225-5333<br>Facsimile:   (800) 635-6425<br>Email: tony@kazlg.com<br><br>*Attorneys for Matthew Starc* |